**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PROBE RESOURCES US LTD. et al.,** | § | **CASE NO. 10-40395** |
| | § | |
| **Debtors.** | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| | § | |
| | § | |
| | § | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF PROBE RESOURCES LTD., PROBE RESOURCES US LTD., PROBE HIGH
ISLAND 115 LTD., PROBE RESOURCES
ENERGY MARKETING US LTD.,  AND PROBE ST 214 LTD, AS MODIFIED
THROUGH FEBRUARY 11, 2011**

Douglas S. Draper (LA Bar No. 5073)
William H. Patrick, III (LA Bar No. 10359)
Leslie A. Collins (LA Bar No. 14891)
Heller, Draper, Hayden, Patrick & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Telephone: (504) 299-3300
Fax:        (504) 299-3399

**ATTORNEYS FOR THE DEBTORS**

February 11, 2011

{00313277-2}

# TABLE OF CONTENTS

1.     INTRODUCTION ................................................................................................. 1

2.     RULES OF CONSTRUCTION AND DEFINITIONS ....................................... 1
     2.1    Rules of Construction ................................................................................ 1
     2.2    Definitions ................................................................................................ 2

3.     CLASSIFICATION OF CLAIMS AND RELEVANT DEADLINES ............. 13
     3.1    Introduction ............................................................................................ 13
     3.2    Unclassified Claims ............................................................................... 13
     3.3    Classification of Claims and Interests ................................................... 13

4.     TREATMENT OF CLAIMS AND INTERESTS ........................................... 14
     4.1    Unclassified Claims ............................................................................... 14
          (a)    Administrative Claims ................................................................ 14
          (b)    Priority Tax Claims ................................................................... 14
     4.2    Unimpaired Classes of Claims and Interests ......................................... 15
          (a)    Class 3:  Claim of the Bureau of Ocean Energy Management,
               Regulation and Enforcement ...................................................... 15
          (b)    Class 4:  Priority Claims ........................................................... 15
     4.3    Impaired Voting Classes of Claims ....................................................... 15
          (a)    Class 1: Allowed Senior Secured Lender Claim ....................... 15
          (b)    Class 2:  Allowed Secured DRA Creditors' Agent Claim for DRA
               Class 1 and 3 Joining Creditors ................................................. 15
          (c)    Class 5: General Unsecured Claims ........................................... 16
          (d)    Class 6: Interests ........................................................................ 16

5.     ACCEPTANCE OR REJECTION OF THE PLAN ...................................... 16
     5.1    Impaired Classes and Interests Entitled to Vote .................................... 16
     5.2    Acceptance by an Impaired Class ........................................................... 17
     5.3    Presumed Acceptances by Unimpaired Classes ..................................... 17
     5.4    Classes Deemed to Reject Plan .............................................................. 17
     5.5    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ..... 17

6.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........... 17
     6.1    Assumption or Rejection ........................................................................ 17
     6.2    Assumed Rights and Obligations ........................................................... 17
     6.3    Payments Related to Assumption of Contracts and Leases .................... 18
     6.4    Assumption Disputes ............................................................................. 18
     6.5    Time for Assumption ............................................................................. 18
     6.6    Claims Arising from Assumption or Rejection ...................................... 18
     6.7    Disputed Claims ..................................................................................... 19

7.     MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 19
     7.1    Implementation ....................................................................................... 19
     7.2    Continued Existence Pursuant to Merger Agreement and Governing
          Documents .............................................................................................. 19
          (a)    Certificate of Incorporation and By-laws .................................. 20
          (b)    Post Confirmation Term Loan .................................................... 20

|  |  | (c) | Advancing Loan Facility | 20 |
|  |  | (d) | Cancellation of Agreements or Rights Relating to Old Securities | 21 |
|  |  | (e) | Authorization and Issuance of the New Common Stock; the Advancing Loan Facility and the Post Confirmation Term Loan | 21 |
|  |  | (f) | Directors and Officers of Reorganized Debtors | 22 |
|  |  | (g) | Revesting of Assets | 22 |
|  |  | (h) | Other Restructuring Transactions | 22 |
|  | 7.3 | | Exemption from Certain Transfer Taxes | 23 |
|  | 7.4 | | Corporate Action | 23 |
|  | 7.5 | | Services by and Fees for Professionals | 23 |
|  | 7.6 | | Reserved Claims | 23 |
|  | 7.7 | | Office of the United States Trustee | 25 |
| 8. | | | CONDITIONS PRECEDENT TO EFFECTIVE DATE | 25 |
| 9. | | | RETENTION OF JURISDICTION | 26 |
|  | 9.1 | | Scope of Jurisdiction | 26 |
|  | 9.2 | | Exclusive Jurisdiction | 26 |
|  | 9.3 | | Failure of the Bankruptcy Court to Exercise Jurisdiction | 27 |
| 10. | | | EFFECTS OF CONFIRMATION | 27 |
|  | 10.1 | | Binding Effect | 27 |
|  | 10.2 | | Discharge Of The Debtors | 27 |
|  | 10.3 | | Releases | 28 |
|  | 10.4 | | Release, Exculpation and Limitation of Liability | 28 |
|  | 10.5 | | Release of Liens | 29 |
|  | 10.6 | | Injunction | 29 |
|  | 10.7 | | Plan Supplement | 30 |
|  | 10.8 | | Change in Control | 30 |
|  | 10.9 | | Avoidance Actions | 30 |
|  | 10.10 | | Liquidating Trust | 30 |
|  | 10.11 | | Delivery of Distributions or Unclaimed Distributions | 33 |
|  |  | (a) | Calculation of Distribution Amounts of New Common Stock | **Error! Bookmark not defin** |
|  |  | (b) | Withholding and Reporting Requirements | 34 |
|  |  | (c) | Setoffs | 34 |
|  |  | (d) | Allocation of Plan Distributions Between Principal and Interest | 34 |
|  | 10.12 | | Liquidating Trust Administration Committee | 34 |
| 11. | | | MISCELLANEOUS PROVISIONS | 35 |
|  | 11.1 | | Professional Fee Claims and Substantial Contribution Claims | 350 |
|  | 11.2 | | Dissolution of Creditors Committee | 35 |
|  | 11.3 | | Dissolution of DRA Restructure Committee | 35 |
|  | 11.4 | | Payment of Statutory Fees | 36 |
|  | 11.5 | | Successors and Assigns and Binding Effect | 36 |
|  | 11.6 | | Compromises and Settlements | 36 |
|  | 11.7 | | Releases and Satisfaction of Subordination Rights | 36 |
|  | 11.8 | | Modifications and Amendments | 36 |
|  | 11.9 | | Severability of Plan Provisions | 36 |
|  | 11.10 | | Revocation, Withdrawal, or Non-Consummation | 37 |

11.11   Notices ................................................................................................37

11.12   Computation of Time........................................................................38

## 1.     INTRODUCTION

PROBE RESOURCESLTD., a British Columbia corporation ("**Probe Canada**"), PROBE ST 214 LTD., a Nevada corporation ("**Probe 214**"), PROBE RESOURCES US LTD., a Nevada corporation ("**Probe US**"), PROBE HIGH ISLAND 115 LTD., a Nevada corporation ("**Probe 115**"), and PROBE RESOURCES ENERGY MARKETING US LTD., a Nevada corporation ("**Probe Energy**") (collectively "**Probe**" or, the "**Debtors**") hereby propose this Joint Chapter 11 Plan of Reorganization (as amended, modified, or supplemented from time to time, the "**Plan**") for the resolution of their outstanding claims and interests. Reference is made to the Joint Disclosure Statement that the Debtors distributed contemporaneously herewith (as amended, modified, or supplemented from time to time, the "**Disclosure Statement**") for a discussion of the Debtors' history, businesses, assets, results of operations, projections for future operations and risk factors, and a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

All holders of claims who are entitled to vote on the Plan are encouraged to read each of the Plan and the Disclosure Statement in its entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules, the Debtors reserve the right, subject to the limitations set forth herein, to alter, amend, or modify, the Plan prior to its substantial consummation.

## 2.     RULES OF CONSTRUCTION AND DEFINITIONS

### 2.1     Rules of Construction

(a)     For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in Section 1.2 of the Plan. Any capitalized term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

(b)     Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

(c)     Any reference in the Plan to (i) a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and (ii) an existing document, exhibit, or other agreement means such document, exhibit or other agreement as it may be amended, modified, or supplemented from time to time.

(d)     Unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan.

(e)     The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

(f)     Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

(g)     The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## 2.2     Definitions

"**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (i) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor, including, without limitation, wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (ii) Professional Fee Claims, (iii) Substantial Contribution Claims, (iv) all fees and charges assessed against the Estates under Section 1930 of Title 28 of the United States Code, (v) and Cure payments for contracts and leases that are assumed under Section 365 of the Bankruptcy Code.

"**Advancing Loan Facility**" means the senior secured advancing loan in an aggregate amount to be disclosed in the Plan Supplement and issued to the holder of the Senior Secured Lender Claim by the Reorganized Debtors and collateralized by substantially all the assets of the Reorganized Debtors pursuant to the Advancing Loan Facility Credit Agreement.

"**Advancing Loan Facility Credit Agreement**" means that certain credit agreement which shall be (i) entered into among the Reorganized Debtors and K2 as of the Effective Date pursuant to which the Advancing Loan Facility will be issued, (ii) filed as part of the Plan Supplement (iii) in accordance with the Plan Support Agreement.

"**Advancing Loan Facility Documents**" means the Advancing Loan Facility Credit Agreement, together with all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, which shall be in accord with the Plan Support Agreement, as the same may be modified, amended, or supplemented.

"**Allowed**" means a Claim (i) that is a Filed Claim and as to which either (a) no objection to its allowance has been timely filed, or (b) any objection to its allowance has been settled or withdrawn by the Debtor or has been denied by a Final Order; (ii) that is not Disputed by the Debtor in the Schedules; (iii) that has been listed in the Schedules as Disputed by the Debtor but has been settled, determined, resolved or adjudicated, as the case may be, in the procedural manner in which such Claim would have been settled, determined, resolved or adjudicated if the Chapter 11 Case had not been commenced; (iv) that has been expressly allowed in the Plan; or (v) that has been adjudicated before the Bankruptcy Court and is allowed by a Final Order; provided, however, that except as set forth in Section 10.7, 10.8 and/or 10.10 of this Plan, all Allowed Claims shall remain subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510.

"**Allowed Rejection Damages Claim Amount**" means an amount no greater than the amount calculated in accordance with Section 502(b)(6) of the Bankruptcy Code.

"**Alternate Transaction**" means a sale of the Debtors or restructuring of the Debtors or similar transaction which is similar to or in substitution for this Plan.

"**Avoidance Actions**" means any and all powers, rights, claims, causes of action and remedies under or relating to sections 544, 545, 547, 548, 549, 550, 551, 553(b) of the Bankruptcy Code or any other fraudulent conveyance, fraudulent transfer or preference laws.

"**Bankruptcy Code**" means Sections 101 et seq., of title 11 of the United States Code, as now in effect or hereafter amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court as may have jurisdiction over the Chapter 11 Cases or any aspect thereof.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Bar Date**" means the last day for holders of Claims, as ordered by the Bankruptcy Court with respect to general proofs of claims and proofs of claims by governmental units, to file Claims against the Debtors.

"**Bureau**" or "**BOEMRE**" means the Bureau of Ocean Energy Management, Regulation and Enforcement.

"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Rule 9006(a) of the Bankruptcy Rules), on which commercial banks are open for business in New York, New York and Houston, Texas.

"**Cash**" means legal tender of the United States or equivalents thereof.

"**Cash Collateral Order**"  means the final order entered by the Bankruptcy Court granting authority for the Debtors' continued use of cash collateral.

"**Causes of Action**" means all actions, causes of action, liabilities, obligations, rights, suits damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims or causes of action whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

"**Chapter 11 Cases**" means Case No. 10-40395, In re Probe Resources US Ltd., Case No. 10-10396, In re Probe ST 214 Ltd., Case No. 10-40397, In re Probe High Island 115 Ltd., Case No. 10-40398, In re Probe Resources Energy Marketing US Ltd., Case No. 10-41286, In re

Probe Resources Ltd., jointly administered under Chapter 11 of the Bankruptcy Code, pending in the Bankruptcy Court.

"**Claim**" means (i) the right to payment against a Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (ii) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"**Claim of the Bureau of Ocean Energy Management, Regulation and Enforcement**" means any Claim of the Bureau of Ocean Energy Management, Regulation and Enforcement or MMS.

"**Class**" means a category of holders of Claims or Interests, as described in the Plan.

"**Class 2 Deposits**" means (i) the ten percent (10%) participation interest in the Post Confirmation Term Loan pursuant to the Participation Agreement; (ii) ten percent (10%) of the New Common Stock issued by Probe Canada pursuant to the Plan, and (iii) cash, net of all the DRA Creditors' Agent's fees and expenses, held by the DRA Creditors' Agent as of the Effective Date pursuant to the DRA.

"**Confirmation**" means confirmation of the Plan by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code.

"**Confirmation Date**" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

"**Confirmation Hearing**" means the hearing to consider Confirmation of the Plan under Section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan.

"**Creditor**" means any Person who holds a Claim against the Debtor.

"**Creditors Committee**" means any official committee of unsecured creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

"**Cure**" means, with respect to the assumption of a contract or lease pursuant to Section 365(b) of the Bankruptcy Code, (i) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties thereto or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by such parties under a contract or lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law, or (ii) the taking of such other actions as may be agreed upon by such parties or ordered by the Bankruptcy Court.

"**Cure Claim**" means an amount necessary to Cure any default or unpaid monetary obligations under an executory contract or unexpired lease, as such amount is fixed by the Cure Claim Procedures.

"**Cure Claim Procedures**" means the procedures approved by the Bankruptcy Court under which the Cure Claims have been fixed.

"**Debtors**" has the meaning set forth in the introductory paragraph of the Plan, and includes each such entity in its respective capacity as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

"**Deficiency Claim**" means an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claims of such Creditor exceed the sum of (a) any set off rights of the Creditor permitted under Section 553 of the Code, plus (b) the Secured Claim of such Creditor; provided however, that if the holder of a Secured Claim or the Class of which such Claim is a member makes the election provided in Section 1111(b)(2) of the Code, there shall be no Deficiency Claim in respect of such Claim.

"**Derivative Claims**" means any claim, cause of action, demand or any other right to payment derivative of or from an injury to the Debtors that is property of their Estates under 11 U.S.C. § 541.

"**DIP Credit Agreement**" means the credit agreement with respect to the DIP Loan Facility.

"**DIP Credit Documents**" means the DIP Credit Agreement and related guaranty, security and other documents in form and substance reasonably satisfactory to the Debtors and K2.

"**DIP Order**" means, collectively, any interim order and final order entered by the Bankruptcy Court authorizing the Debtors to borrow money of K2 to pay operating expenses incurred in the ordinary course of business and costs and expenses of the administration of the Debtors' bankruptcy cases, and granting liens to K2 as security for such borrowings.

"**DIP Loan Facility**" means that certain advancing credit facility described in the DIP Credit Agreement and the DIP Order to fund operating expenses of the Debtors' incurred in the ordinary course of business and costs and expenses of the administration of the Debtors' bankruptcy cases.

"**Disclosure Statement**" has the meaning set forth in the introductory paragraph of the Plan, as subsequently may be amended, supplemented, or modified from time to time, and that is prepared, approved and distributed in accordance with Section 1125 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules.

"**Disputed**" means, with respect to a Claim, (i) if a Proof of Claim bar date for such Claim has been established pursuant to a Final Order, (a) a Claim as to which a Proof of Claim is not timely filed, (b) a Filed Claim as to which the time period set for the Debtor to file an objection to such Claim has not expired, or (c) a Filed Claim as to which the Debtor has timely

filed an objection but the Claim has not been settled by the Debtor or determined, resolved, or adjudicated by Final Order; (ii) if a Proof of Claim bar date has not been established for such Claim, a Claim as to which (a) the Debtor disputes its liability in any manner that would have been available to them had the Chapter 11 Case not been commenced, and (b) the liability of the Debtor has not been settled by the Debtor or determined, resolved, or adjudicated by final, non-appealable order of a court or other tribunal of competent jurisdiction; (iii) that has been expressly disputed in the Plan; or (iv) that has been permitted to be adjudicated before the Bankruptcy Court and has not been allowed by a Final Order.

"**Distribution**" means any distribution made under the Plan to holders of Allowed Claims or Interests.

"**Distribution Date**" means the date, occurring as soon as reasonably practicable after the Effective Date, on which the Liquidating Trustee first makes Distributions, if any, to holders of Allowed Claims or Interests as provided in the Plan.

"**Distribution Record Date**" means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date.

"**DRA**" means that certain Debt Restructuring Agreement dated effective August 31, 2009, by and among the Probe Entities, the Joining Creditors, and Jeffrey A. Compton in his capacity as Creditors' Agent, together with all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, as the same may have been modified, amended, or supplemented.

"**DRA Creditors' Agent Claim**" means the Secured claim of Jeffrey A. Compton in his capacity as Creditors' Agent arising under the DRA.

"**DRA Class 1 Claim of K2**" means the amounts owed to K2 as a "Class 1 Creditor" as that term is defined in the DRA, on account of claims assigned to K2 by Schlumberger Technology Corporation and Baker Hughes Oilfield Operations, Inc. (d/b/a Baker Atlas, Baker Oil Tools, Hughes Christensen and Baker Hughes INTEQ) and Baker Petrolite Corporation.

"**DRA Class 1 Joining Creditors**" means "Class 1 Creditors" as that term is defined in the DRA. Amounts owed to DRA Class 1 Joining Creditors shall be calculated pursuant to the DRA, as of the Petition Date, and are set forth in the exhibit(s) to the Plan Supplement. On the Effective Date, the DRA Class 1 Claim of K2 shall be deemed assigned to Newpark Drilling Fluids, LLC and Spartan Offshore Drilling, LLC, pro rata.

"**DRA Class 3 Joining Creditors**" means "Class 3 Creditors" as that term is defined in the DRA. Amounts owed to DRA Class 3 Joining Creditors shall be calculated pursuant to the DRA, as of the Petition Date, and are set forth in the exhibit(s) to the Plan Supplement. On the Effective Date, the DRA Class 3 Joining Creditors' Claims of Newpark Drilling Fluids, LLC and Spartan Offshore Drilling, LLC shall be reduced by their proportionate share of the dollar amount of the DRA Class 1 Claim assigned by K2.

"**DRA Class 1 and 3 Joining Creditors**" means DRA Class 1 Joining Creditors and DRA Class 3 Joining Creditors.

"**DRA Joining Creditors**" means  Creditors who are party to the DRA.

"**DRA Restructure Committee**" means the committee of individuals or entities appointed to represent the Class 1 Creditors, the Class 2 Creditors and the Class 3 Creditors pursuant to the DRA, including Hercules Drilling Company, LLC, Kim Susan, LLC, Tetra Technologies, Inc., Newpark Drilling Fluids, LLC, and K2.

"**DRA Creditors' Agent**" means Jeffrey A. Compton.

"**36/37 Loan Documents**" means the credit agreement relating to that certain loan by K2 to the Debtors in the principal amount of 9.25 million on or about November 12, 2009, together with all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, as the same may have been  modified, amended, or supplemented.

"**246 DIP Facility**" means the credit facility described in the 246 DIP Credit Agreement and any interim order and final order entered by the Bankruptcy Court authorizing the Debtors to borrow money of K2 and granting liens to K2 as security for such borrowings for completion work in connection with the EC 246 Lease.

"**246 DIP Credit Documents**" means the 246 DIP Credit Agreement and any related guaranty, security and other documents in form and substance reasonably satisfactory to the Debtors and K2, which shall be in accord with the Plan Support Agreement.

"**246 DIP Credit Agreement**" means any credit agreement relating to the 246 DIP Facility under which the Debtors or Reorganized Debtors borrow money of K2 and grant liens to K2 as security for such borrowings for completion work in connection with the EC 246 Lease, which shall be (i) filed as part of the Plan Supplement, (ii) in accord with the Plan Support Agreement.

"**246 Loan Documents**" means the credit agreement relating to that proposed loan by K2 to the Debtors in the aggregate amount of $11.1 million on or about May 19, 2010, together with all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, as the same may have been modified, amended, or supplemented.

"**Effective Date**" means the Business Day upon which all conditions to the consummation of the Plan as set forth in Article 8 of the Plan have been satisfied or waived as provided in Article 8 of the Plan, and is the date on which the Plan becomes effective.

"**Estate**" means the estate of any of the Debtors in the Chapter 11 Cases, and "Estates" means, collectively, the estates of all of the Debtors in the Chapter 11 Cases, as  created pursuant to Section 541 of the Bankruptcy Code.

"**Exchange Act**" means the Securities and Exchange Act of 1934, as amended.

"**Filed Claim**" means a Claim for which a Proof of Claim has been (i) timely filed with the Court prior to the Bar Date, or (ii) filed with the Court after the Bar Date but deemed to have been filed prior to the Bar Date pursuant to a Final Order of the Bankruptcy Court.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, or the docket of any such other court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

"**General Unsecured Claim**" means an unsecured Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Claim, a Senior Secured Lender Claim, a Secured DRA Creditors' Agent Claim, or a Claim of the Bureau of Ocean Energy Management, Regulation and Enforcement.  This definition specifically includes, without limitation, any Rejection Damages Claim or any Claim for penalties on, with respect to, or arising in connection with, any Priority Tax Claim or Secured Tax Claim.

"**Impaired**" means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Interest**" means the legal, equitable, contractual, or other rights of any Person (i) with respect to Probe Canada Interests or Probe Subsidiary Interests, or (ii) to acquire or receive any of the foregoing.

"**K2**" means The K2 Principal Fund L.P. or its designee or assignee.

"**K2-TEC Loan Documents**" means that certain Note and Warrant Purchase Agreement dated January 20, 2009 between Third Eye Capital Corporation and PROBE RESOURCES LTD. for the issuance of senior secured notes in the aggregate principal amount of $10,000,000, together with all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, as the same may have been  modified, amended, or supplemented.

"**Lease Rejection Motion**" means any motion filed by the Debtor in the Bankruptcy Court wherein the Debtor seeks to reject certain of their leases of nonresidential real property.

"**Lender**" means the holder of the Senior Secured Lender Claim.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Liquidating Trust**" means that certain trust created on the Effective Date pursuant to the Liquidating Trust Agreement.

"**Liquidating Trust Assets**" means the (i) Class 2 Deposits, (ii) Avoidance Actions and (iii) proceeds of the foregoing.

"**Liquidating Trust Administrative Committee**" or "**LTAC**" means a committee formed pursuant to the terms of the Liquidating Trust Agreement and this Plan.

"**Liquidating Trustee**" means Jeffrey A. Compton or his successor under the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means that certain Liquidating Trust Agreement which shall be (i) filed as an exhibit to the Plan Supplement, (ii) in a form and substance acceptable to Jeffrey Compton and the DRA Restructure Committee.

"**New Common Stock**" means the new common stock of Reorganized Probe Canada to be authorized and issued under the Plan, with terms substantially as set forth in the New Probe Resources Governing Documents to be included in the Plan Supplement.

"**New Probe Resources Governing Documents**" means the certificate of incorporation, articles of incorporation, by-laws, articles of organization, operating agreement, shareholder agreements or other charter documents of the Reorganized Debtors and any other governing corporate document with respect to the Reorganized Debtors.

"**New Securities**" means, collectively, the New Common Stock and any other securities issued pursuant to the Plan or after the Effective Date.

"**Old Securities**" means the Probe Canada Interests.

"**Original Credit Loan Documents**" means that certain term credit facility agreement in the principal amount of $8,500,000 dated February 19, 2009 between The K2 Principal Fund, L.P. and PROBE RESOURCES LTD., together with all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, as the same may have been modified, amended, or supplemented.

"**Participation Agreement**" means that certain Participation Agreement between The K2 Principal Fund L.P. and Jeffrey Compton, Liquidating Trustee which shall be (i) filed with the Plan Supplement, (ii) in accordance with the Plan Support Agreement.

"**Person**" means any person, individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

"**Petition Date**" means November 16, 2010, the date certain of the Debtors filed petitions for relief commencing their Chapter 11 Cases.

"**Plan**" has the meaning set forth in the introductory paragraph of the Plan and includes all exhibits and supplements as the same may be amended, modified, or supplemented from time to time.

"**Plan Support Agreement**" means that certain Restructuring, Lockup and Plan Support Agreement by and among the Debtors, K2 and the DRA Creditors Agent, as approved by the Bankruptcy Court.

"**Plan Supplement**" means the supplement to the Plan which includes, without limitation, the forms of the New Probe Resources Governing Documents, the Advancing Loan Facility Credit Agreement, the Post Confirmation Term Loan Agreement, the Participation Agreement, the 246 DIP Credit Agreement and the designation of the new officers and directors of the Reorganized Debtors.

"**Post Confirmation Term Loan**" means the secured term loan in the original aggregate principal amount to be disclosed in the Plan Supplement and issued to the holder of Senior Secured Lender Claim (with a participation interest held by the Liquidating Trust) by the Reorganized Debtors and collateralized by substantially all the assets of the Reorganized Debtors pursuant to the Post Confirmation Term Loan Agreement.

"**Post Confirmation Term Loan Agreement**" means that certain Post Confirmation Term Loan Agreement or Term Note which shall be (i) entered into by the Reorganized Debtors and K2 as of the Effective Date pursuant to which the Post Confirmation Term Loan will be issued, (ii) filed as part of the Plan Supplement, and (iii) in accord with the Plan Support Agreement.

"**Post Confirmation Term Loan Documents**" means the Post Confirmation Term Loan Agreement, the Participation Agreement and all collateral and other documents, security agreements, promissory notes, guarantees, financing statements, mortgages, instruments and agreements related thereto, which shall be in accord with the Plan Support Agreement, as the same may be modified, amended, or supplemented.

"**Priority Claim**" means a Claim against a Debtor entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"**Probe Canada**" means PROBE RESOURCES LTD., a British Columbia corporation.

"**Probe 115**" means PROBE HIGH ISLAND 115 LTD., a Nevada corporation.

"**Probe 214**" means PROBE ST 214 LTD., a Nevada corporation.

"**Probe US**" means PROBE RESOURCES US LTD., a Nevada corporation.

"**Probe Energy**" means PROBE RESOURCES ENERGY MARKETING US LTD., a Nevada corporation.

"**Probe Canada Interests**" means, collectively, all equity interests in PROBE RESOURCES LTD. outstanding prior to the Effective Date, including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of PROBE

RESOURCES LTD., together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in PROBE RESOURCES LTD. prior to the Effective Date.

"**Probe Subsidiary Interests**" means, collectively, all equity interests in Probe 214, Probe US, Probe 115, Probe Energy outstanding prior to the Effective Date, including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of the foregoing., together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in Probe 214, Probe US, Probe 115, or Probe Energy prior to the Effective Date.

"**Probe US Subsidiaries**" means collectively Probe 214, Probe US, Probe 115 and Probe Energy.

"**Professional**" means any professional employed by the Debtors in the Chapter 11 Case by order of the Bankruptcy Court, excluding any of the Debtor's ordinary course professionals.

"**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

"**Pro Rata**" means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless the Plan provides otherwise.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court in the Chapter 11 Case.

"**Reinstated**" means (i) leaving unaltered the legal, equitable, and contractual rights to which the holder of a Claim is entitled so as to leave such Claim unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (A) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code, or of a kind that Section 365(b)(2) expressly does not require to be cured, (B) reinstating the maturity of such Claim as such maturity existed before such default, (C) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, (D) if such Claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to Section 365(b)(l)(A) of the Bankruptcy Code, compensating the holder of such Claim (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure, and (E) not otherwise altering the legal, equitable, or contractual rights to which the holder of such Claim is entitled; *provided, however*, that any Claim that is Reinstated under the Plan shall be subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510.

"**Rejection Damages Claim**" means a Claim arising from the Debtor's rejection of a contract or lease, which Claim shall be treated as a General Unsecured Claim and shall be subject to the terms and conditions set forth in the Plan.

"**Reorganized Debtors**" means reorganized Probe Canada, Probe 214, Probe US, Probe 115 and Probe Energy and their successors, on and after the Effective Date.

"**Reserved Claims**" means all actions, causes of action, rights, suits, damages, judgments, remedies, demands, set offs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims or causes of action whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, of the Debtors existing or hereafter arising based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or occurring during the course of the Chapter 11 Cases, including through the Effective Date, but excluding any Avoidance Actions and any claims released under the Plan.

"**Schedules**" means, collectively, the schedules of assets and liabilities, the list of equity interests, and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such have been or may be amended or supplemented by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim (i) that is secured by a Lien on property in which an Estate has an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of setoff; (ii) to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; (iii) the amount of which is agreed upon in writing by the Debtor or the Reorganized Debtor and the holder of such Claim or determined, resolved, or adjudicated by final, non-appealable order of a court or other tribunal of competent jurisdiction; or (iv) that is otherwise designated as a Secured Claim pursuant to this Plan.

"**Senior Secured Lender Claim**" means the Secured Claims of The K2 Principal Fund L.P. arising or existing under or related to any of the indebtedness issued pursuant to, or otherwise collateralized pursuant to the Original Credit Loan Documents, the K2-TEC Loan Documents, the 36/37 Loan Documents, and the 246 Loan Documents.  Solely for purposes of classification and treatment under this Plan, this definition also includes all Claims and Liens and other rights that were created under the Cash Collateral Order and the DIP Order in favor of K2.

"**Secured Tax Claim**" means a Priority Tax Claim that is also a Secured Claim, but is treated like a Priority Tax Claim pursuant to section 1129(a)(9)(D) of the Bankruptcy Code.

"**Subordinated Claim**" means any Claim against the Debtor that is subordinated pursuant to either Section 510(b) or 510(c) of the Bankruptcy Code, which includes any Claim arising from the rescission of a purchase or sale of any Old Security, any Claim for damages

arising from the purchase or sale of an Old Security, or any Claim for reimbursement, contribution, or indemnification on account of any such Claim.

"**Substantial Contribution Claim**" means a claim for compensation or reimbursement of costs and expenses relating to services rendered in making a substantial contribution in the Chapter 11 Cases pursuant to Sections 503(b)(3), (4), or (5) of the Bankruptcy Code.

"**Subsidiary Merger Agreement**" means that certain Subsidiary Merger Agreement included as an exhibit to the Plan or the Plan Supplement, together with all collateral and other documents, instruments and agreements related thereto, as the same may be modified, amended, or supplemented.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended.

"**Unimpaired**" means, with respect to any Claim, that such Claim is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Voting Deadline**" means the deadline established by the Bankruptcy Court by which each holder of a Claim in Classes that are entitled to vote on the Plan must submit the ballot indicating each such holder's vote on the Plan.

"**Voting Record Date**" means the date established by the Bankruptcy Court for determining the holders of Claims entitled to vote on the Plan.

## 3.     CLASSIFICATION OF CLAIMS AND RELEVANT DEADLINES

### 3.1     Introduction

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date. A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

### 3.2     Unclassified Claims

In accordance with Section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Secured Tax Claims have not been classified.

### 3.3     Classification of Claims and Interests

The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Allowed Senior Secured Lender Claim | Impaired | Entitled to Vote |
| 2 | Allowed Secured DRA | Impaired | Entitled to Vote |

| | | Creditors' Agent Claim | | |
|---|---|---|---|---|
| | 3 | Claim of the Bureau of Ocean Energy Management, Regulation and Enforcement | Unimpaired | Not Entitled to Vote – Deemed to Accept |
| | 4 | Priority Claims | Unimpaired | Not Entitled to Vote – Deemed to Accept |
| | 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| | 6 | Interests | Impaired | Entitled to Vote |

## 4.    TREATMENT OF CLAIMS AND INTERESTS

### 4.1    Unclassified Claims

#### (a)    Administrative Claims

With respect to each Allowed Administrative Claim, except as otherwise provided  in Section 10.1 of this Plan, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtors and the holder of such Administrative Claim, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which the Debtors and such holder shall have agreed upon in writing; *provided, however*, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

#### (b)    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim as shall have been determined by the Debtors, (i) regular installments payable in Cash, over a period not exceeding five years after the Petition Date, having a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (ii) such different treatment as to which the Debtors and such holder have agreed in writing; *provided*, that such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors after the Effective Date), than the treatment set forth in clause (i) above; or (iii) payment in full in Cash on the later of the Distribution Date or the date on which such Claim becomes an Allowed Claim.

Each holder of an Allowed Priority Tax Claim shall not receive any Cash or other distribution on account of a penalty on, with respect to, or arising in connection with, such Allowed Priority Tax Claims. All penalties on, with respect to, or arising in connection with, any Priority Tax Claim shall be treated as General Unsecured Claims.

**4.2     Unimpaired Classes of Claims and Interests**

    **(a)     Class 3:     Claim of the Bureau of Ocean Energy Management, Regulation and Enforcement**

As of the Effective Date, all contracts between the Debtors and RLI Insurance Company shall be assumed, to the extent section 365 of the Bankruptcy Code applies.  All bonds and restricted cash shall remain in place to secure the performance of the Reorganized Debtors' applicable decommissioning and/or plugging and abandonment obligations.  As of the Effective Date, the Debtors shall assume, to the extent section 365 of the Bankruptcy Code applies, all of its oil and gas leases in the Gulf of Mexico granted by and through the MMS / BOEMRE and shall pay all claims of the BOEMRE in the ordinary course of business.

    **(b)     Class 4:  Priority Claims**

On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date on which such Priority Claim becomes an Allowed Priority Claim, or (iii) the date on which such Allowed Priority Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Priority Claim, each holder of an Allowed Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Claim, either (A) Cash on the Effective Date equal to the unpaid portion of such Allowed Priority Claim or (B) such different treatment as to which the Debtors and such holder shall have agreed upon in writing; *provided*, that such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors after the Effective Date), than the treatment set forth in clause (A) above.

**4.3     Impaired Voting Classes of Claims**

    **(a)     Class 1: Allowed Senior Secured Lender Claim**

 The holder of the Allowed Senior Secured Lender Claim will receive, on the Effective Date, on account of such Allowed Senior Secured Lender Claim:  (i) ninety percent (90%) of the number of shares of New Common Stock to be issued by Probe Canada; (ii) the obligations owed by the Reorganized Debtors under the Advancing Loan Facility; (ii) the obligations owed by the Reorganized Debtors under the 246 DIP Facility; (iii) the obligations owed by the Reorganized Debtors under the Post Confirmation Term Loan; and (iv) an allowed general unsecured Deficiency Claim.

    **(b)     Class 2:  Allowed Secured DRA Creditors' Agent Claim for DRA Class 1 and 3 Joining Creditors**

The DRA Creditors' Agent shall receive (in his capacity as Trustee of the Liquidating Trust) on the Effective Date and for the benefit of the DRA Class 1 and 3 Joining Creditors, a ten percent (10%) participation interest in the Post Confirmation Term Loan and ten percent (10%) of the New Common Stock to be issued by Probe Canada. The DRA Class 1 and 3 Joining Creditors shall receive, on account of the DRA Creditors' Agent's Claim, distributions from the Liquidating Trust from and on account of the foregoing interests.  DRA Class 1 and 3 Joining Creditors shall also be included in the general unsecured creditor class.  On the Effective Date,

the DRA Creditors' Agent shall also distribute, any funds received from the Debtors prior to the Petition Date, to DRA Class 1 and 3 Joining Creditors pursuant to the DRA.

### (c)   Class 5: General Unsecured Claims

Each holder of an Allowed General Unsecured Claim shall receive a pro rata share of distributions from the Liquidating Trust from and on account of any recoveries attributable to Avoidance Actions after payment of fees and expenses of the Liquidating Trust.

### (d)   Class 6: Interests

### Class 6(a):   Interests in Probe Canada

The holders of Probe Canada Interests shall not receive or retain any economic value under the Plan.  All options, warrants or rights to acquire or receive Probe Canada Interests, New Common Stock, or New Securities are cancelled without any further act or action.   However, subject to the acceptances of senior classes of creditors of Probe Canada (and with the consent of the holder of the Senior Secured Lender Claim), holders of Probe Canada Interests shall retain such interests (except as set forth above), but shall be substantially diluted based on the New Common Stock issued by reorganized Probe Canada.  Holders of existing Interests in Probe Canada shall not, after issuance of the New Common Stock, hold more than three percent (3%) of the total outstanding  common stock in reorganized Probe Canada.  The value of the retained Interests is estimated at zero, as of the Effective Date.

Notwithstanding the preceding paragraph, to the extent an impaired senior class of claims rejects the Plan, all Probe Canada Interests of any kind shall be cancelled as of the Effective Date and the holders thereof shall not receive or retain any property under the Plan on account of such Interests.

### Class 6(b):   Interests in Probe US Subsidiaries

The Interests in all Probe Canada subsidiaries shall be merged into the Interests held by Probe Canada in Probe US.  The Interests in Probe US shall be technically preserved (with the consent of the holder of the Senior Secured Lender Claim) as a means to preserve the corporate structure and avoid the unnecessary cost of having to reconstitute such structure.  The Probe US Subsidiaries  shall be merged into Probe US.  All reorganization value shall be distributed to senior classes of creditors and no economic value shall be retained by the holder of Probe Subsidiary Interests.  The value of the retained Interests in Probe US is estimated at zero, as of the Effective Date.

## 5.   ACCEPTANCE OR REJECTION OF THE PLAN

### 5.1   Impaired Classes and Interests Entitled to Vote

Holders of Claims in the Impaired Voting Class of Claims are entitled to vote as a Class to accept or reject the Plan. Accordingly, the votes of holders of Claims in Classes 1, 2, 5, and 6 (together, the "**Voting Classes**" and each a "**Voting Class**") are entitled to vote with respect to the Plan.

### 5.2    Acceptance by an Impaired Class

In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan. An Impaired class of Interests shall have accepted the Plan if such plan has been accepted by holders of such interests that hold at least 2/3 in amount of the allowed interests of such class that have accepted or rejected such Plan.

### 5.3    Presumed Acceptances by Unimpaired Classes

Claims in Classes 3 and 4 (together, the "**Unimpaired Classes**") are Unimpaired under the Plan. Under Section 1126(f) of the Bankruptcy Code, holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such Unimpaired Claim holders shall not be solicited.

### 5.4    Classes Deemed to Reject Plan

Any class not entitled to receive or retain any property under the Plan shall be deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

### 5.5    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtor requests Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. In addition, the Debtor is prepared to request confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) with respect to the each Voting Class, if applicable, if a Voting Class rejects the Plan. The Debtor reserves the right to alter, amend, or modify the Plan, the Plan Supplement, or any exhibit, in accordance with the provisions of the Plan as necessary to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

## 6.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1    Assumption or Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases, will be rejected unless such executory contract or unexpired lease:  (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume filed on or before the Confirmation Hearing; or (c) has been previously rejected or assumed.

### 6.2    Assumed Rights and Obligations

Each contract and lease that is assumed shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such contract or lease and (ii) all contracts or leases appurtenant to property, including all easements, licenses, permits, rights,

privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

### 6.3   Payments Related to Assumption of Contracts and Leases

Any monetary amounts by which each contract and lease to be assumed pursuant to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by payment of the Cure amount.

### 6.4   Assumption Disputes

If there is a dispute regarding (a) the nature of amount of any Cure, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption; provided, however, that the Reorganized Debtor shall be authorized to reject any contract or lease to the extent the Reorganized Debtor, in the exercise of its sound business judgment, concludes that the amount of the Cure obligation as determined by such Final Order, renders assumption of such contract or lease unfavorable to the Reorganized Debtor. In the event the Reorganized Debtors reject any previously assumed contract or leases, and such rejection gives rise to a Rejection Damages Claim, such Rejection Damages Claim arising out of such rejection shall be limited to the Allowed Rejection Damage Claim Amount.

### 6.5   Time for Assumption

The Debtors reserve the right, at any time prior to the Effective Date, except as otherwise specifically provided herein, to seek to reject any contract or lease to which a Debtor is a party and to file a motion requesting authorization for the rejection of any such contract or lease.  As of the Effective Date, the Debtor will reject the executory contracts and unexpired leases set forth on any exhibit to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" filed by the Debtors with the Bankruptcy Court before the entry of the Confirmation Order.

### 6.6   Claims Arising from Assumption or Rejection

Except as otherwise provided in the Plan or by Final Order of the Bankruptcy Court, all (i) Allowed Claims arising from the assumption of any contract or lease shall be treated as Administrative Claims pursuant to the Plan; and (ii) Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to and in accordance with the applicable terms of the Plan.

If the rejection by the Debtors, pursuant to the Plan or otherwise, of a contract or lease results in a Rejection Damages Claim, then such Rejection Damages Claim shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor or the

properties of any of them unless a Proof of Claim is filed and served upon counsel to the Reorganized Debtor on or prior to the later of (i) 30 days after entry of the order authorizing the rejection of such contract or lease and (ii) 15 days after the date designated as the rejection date in the order authorizing the rejection of such contract or lease.  The Debtor reserves its rights to object to any Rejection Damages Claim.

### 6.7     Disputed Claims

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.  No distributions shall be made on a Disputed Claim until and unless such Disputed Claim becomes an Allowed Claim.  The Reorganized Debtors and the Liquidating Trustee shall have standing to object, litigate and resolve all Disputed Claims, including Disputed Class 5 Claims.  The deadline for all objections to Claims shall be August 20, 2012 , which deadline may be extended upon *ex parte* motion of the Reorganized Debtors or the Liquidating Trustee.

## 7.     MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1     Implementation

The source(s) of funding necessary for the treatment of Claims and Interests as set forth in the Plan will be from the Debtors' operations through the Effective Date and the Liquidating Trust deposits.  On the Effective Date, except as provided for herein, all of each Debtor's assets shall vest in the applicable  Reorganized Debtor free and clear of all Claims, Liens, charges other encumbrances and Interests.  On or prior to the Effective Date, if the Debtors have not already assumed and assigned all of the Assumed Executory Contracts, the Debtors shall assume and assign all remaining Assumed Executory Contracts to the Reorganized Debtors.

As of the Effective Date, without the need for any further action, Probe US, Probe 214, Probe 115, and Probe Energy shall consummate the merger as set forth in the Subsidiary Merger Agreement, file a certificate of merger or other required documents with the Nevada Secretary of State, and execute any additional documents and take any additional actions necessary to consummate the merger or otherwise contemplated in the Subsidiary Merger Agreement.  As of the Effective Date, Probe US shall be the sole surviving wholly owned subsidiary company of Probe Canada.

On and after the Effective Date, the Reorganized Debtors may operate their business, may use, acquire and dispose of property, may retain, compensate and pay any professionals or advisors, and compromise or settle any causes of action, claims or interests without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan and the Confirmation Order.

### 7.2     Continued Existence Pursuant to Merger Agreement and Governing Documents

The Reorganized Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the jurisdiction in which each is incorporated and pursuant to the New Probe Resources Governing Documents and Subsidiary Merger Agreement.  In addition to the merger contemplated hereunder, the Reorganized Debtors reserve the right to undertake transactions as may be necessary or appropriate under the circumstances.  Such transactions may include one or more mergers, sales, consolidations, restructurings, acquisitions, dispositions, liquidations or dissolutions, as may be determined by the Reorganized Debtors.  The actions to effect these Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, sale, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligations on terms consistent with the terms of this Plan and having such other terms to which the applicable entities may agree; (c) the filing of appropriate certificates or articles of merger, consolidation, incorporation, formation or dissolution pursuant to applicable state law; and (d) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law.

### (a)    Certificate of Incorporation and By-laws

The certificate or articles of incorporation, by-laws, articles of organization, operating agreement, or other charter documents as applicable, shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, provisions prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code; and, as amended, shall constitute the New Probe Resources Governing Documents.

### (b)    Post Confirmation Term Loan

On the Effective Date, the Post Confirmation Term Loan, together with the Post Confirmation Term Loan Documents evidencing obligations of the Reorganized Debtors thereunder, and any and all other documents, instruments, and agreements to be executed and delivered in connection therewith on the Effective Date, shall become effective.  The Post Confirmation Term Loan issued pursuant to the Post Confirmation Term Loan Documents shall be paid as set forth in the Post Confirmation Term Loan Agreement and other Post Confirmation Term Loan Documents.

### (c)    Advancing Loan Facility

On the Effective Date, the Advancing Loan Facility, together with the Advancing Loan Facility Documents evidencing obligations of the Reorganized Debtors thereunder, and any and all other documents, instruments, and agreements to be executed and delivered in connection therewith on the Effective Date, shall become effective.  The Advancing Loan Facility and all obligations under the Advancing Loan Facility Documents shall be paid as set forth in the Advancing Loan Facility Credit Agreement and the Advancing Loan Facility Documents.  The

Advancing Loan Facility shall replace the DIP Loan Facility and shall retain the priorities and rights granted in connection with the DIP Loan Facility.

> **(d)    246 DIP Facility**

On the Effective Date, the 246 DIP Facility, together with the 246 DIP Credit Documents and any and all other documents, instruments, and agreements to be executed and delivered in connection therewith, shall remain in effect and shall continue to be effective on and after the Effective Date.  The 246 DIP Facility, and all obligations under the 246 DIP Facility shall be paid as set forth in 246 DIP Credit Agreement and the 246 DIP Credit Documents.

> **(e)    Cancellation of Agreements or Rights Relating to Old Securities**

On the Effective Date, the obligations of Probe Canada to any holder of Probe Canada Interests on account of any warrant, option, or other right by a holder to receive or acquire additional Probe Canada Interests or New Securities shall be cancelled, annulled and discharged without further act or action under any applicable agreement, law, regulation, order, or rule and without any action on the part of the Bankruptcy Court or any Person.  Otherwise, the obligations of Probe Canada with respect to the Interests,  New Common Stock, and the New Securities shall be governed by the New Probe Resources Governing Documents.

> **(f)    Authorization and Issuance of the New Common Stock; the Advancing Loan Facility, the 246 DIP Facility and the Post Confirmation Term Loan**

The Reorganized Debtors will, subject to and in compliance with the Plan, (i) provide for authorization of the New Probe Resources Governing Documents and the New Common Stock, (ii) issue on the Effective Date shares of New Common Stock - which number of shares shall represent at least ninety-seven percent (97%) of the total stock of Probe Canada authorized, issued and outstanding on the Effective Date - for distribution as follows:  ninety percent (90%) of the New Common Stock [87.3% of the total authorized, issued and outstanding stock] shall be distributed to the holder of the Allowed Secured Lender Claim, and ten percent (10%) of the New Common Stock [9.7% of the total authorized, issued and outstanding stock] shall be distributed to the Liquidating Trustee and deposited in the Liquidating Trust for the benefit of DRA Class 1 and 3 Joining Creditors.  After the issuance of the New Common Stock, Probe Canada intends to file Articles of Amendment pursuant to the BC Act to consolidate its outstanding share capitol at an appropriate ratio.

The New Common Stock issued under the Plan shall be subject to dilution based upon any other shares of New Common Stock or New Securities issued after the Effective Date.

The Reorganized Debtors will authorize the Advancing Loan Facility and Post Confirmation Term Loan issued on the Effective Date by the Reorganized Debtors pursuant to the Post Confirmation Term Loan Documents and the Advancing Loan Facility Documents.  On the Effective Date, the Reorganized Debtors and the holder of the Senior Secured Lender Claim shall become parties to and bound by the terms of the Post Confirmation Term Loan Agreement, the Advancing Loan Facility Credit Agreement regardless of whether any such party actually

executes the same.  The Post Confirmation Term Loan and the Advancing Loan Facility will be in the amounts and on the terms set forth in the Post Confirmation Term Loan Documents and the Advancing Loan Facility Documents.  The 246 DIP Facility and the 246 DIP Credit Documents shall remain effective on and after the Effective Date.  The material terms and conditions of the Post Confirmation Term Loan, the Advancing Loan Facility and the 246 DIP Facility are set forth in exhibits or supplements to the Disclosure Statement and/or the Plan.

The issuance and distribution of the New Common Stock pursuant to the Plan shall be authorized and entitled to the protections under Section 1145 of the Bankruptcy Code as of the Effective Date without further act or action by any Person, except as may be required by the New Probe Resources Governing Documents; and all documents evidencing the same shall be executed and delivered as provided for in the Plan.

### (g)    Directors and Officers of Reorganized Debtors

The election of the Debtors' new boards of directors shall be approved by the Bankruptcy Court in the Confirmation Order. Thereafter, the new boards shall be elected in accordance with the New Probe Resources Governing Documents.  Upon the Effective Date, the New Probe Resources Governing Documents shall contain provisions that, to the fullest extent permitted by applicable law and excepting fraud, gross negligence and intentional torts, (i) eliminate the personal liability of the Reorganized Debtors' directors, officers and key employees serving on and after the Effective Date for monetary damages; and (ii) require the Reorganized Debtors, subject to appropriate procedures to indemnify the Reorganized Debtors' directors, officers, and key employees serving on and after the Effective Date for all claims and actions, including, without limitation, for pre-Effective Date acts and occurrences.

### (h)    Revesting of Assets

Except as otherwise provided herein, the property of each of the Debtors' Estates, including Reserved Claims, shall revest in the Reorganized Debtors on the Effective Date, and shall be subject to the Subsidiary Merger Agreement.  Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims and Interests.

### (i)    Other Restructuring Transactions

After the Effective Date, with the consent of its Board of Directors or other applicable governing body, the Reorganized Debtors may enter into such transactions and may take such actions as may be necessary or appropriate, in accordance with any applicable state law, to effect a corporate or operational restructuring of their respective businesses, to otherwise simplify the overall corporate or operational structure of the Reorganized Debtors, to achieve corporate or operational efficiencies, or to otherwise improve financial results; provided, however, that such transactions or actions are not otherwise inconsistent with the Plan or the distributions to be made under the Plan. Such transactions or actions may include such mergers, consolidations,

restructurings, dispositions, liquidations, closures, or dissolutions, as may be determined by the Reorganized Debtors to be necessary or appropriate.

**7.3     Exemption from Certain Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Reorganized Debtors or any other Person pursuant to the Plan, including any Liens granted by the Debtors or the Reorganized Debtors to secure the Advancing Loan Facility and the Post Confirmation Term Loan, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, sales or use tax, or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan.

**7.4     Corporate Action**

On the Effective Date, the adoption and filing of the New Probe Resources Governing Documents and all actions contemplated by the Plan shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for herein involving the corporate structure of the Debtors or Reorganized Debtors, and any corporate action required by the Debtors or Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders of the Debtors or Reorganized Debtors.  On the Effective Date, the appropriate chief executive officer, president, chief financial officer, general counsel, or any other appropriate officer or director of the Reorganized Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan, or as may be appropriate to effectuate or further evidence the transactions contemplated by the Plan, in the name of and on behalf of the Reorganized Debtors without the need for any required approvals, authorizations, or consents except for express consents required under the Plan.

**7.5     Services by and Fees for Professionals**

The Reorganized Debtors will be responsible for the payment of fees and expenses incurred by its Professional(s), if any, following the Effective Date without the necessity of Bankruptcy Court approval.

**7.6     Claims Against Non-Debtors**

Except as otherwise provided in the Plan, the Confirmation Order, and in accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date, the Reorganized Debtors shall hold all rights in the Reserved Claims that the Debtors or Reorganized Debtors may hold against any Person.   The Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all such Reserved Claims.  On the Effective Date, except as otherwise provided in the Plan or Confirmation Order, Avoidance Actions, shall be deemed transferred to the Liquidating Trust.  The Liquidating Trust may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all such Avoidance Actions.  Except as otherwise provided in the Plan or Confirmation Order, any and all Reserved Claims and Avoidance Actions are expressly preserved including:

(a)      Any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities the Debtors' may have against any employee, director or officer that is based upon an alleged breach of a confidentiality, non-compete or any other contractual or fiduciary obligations owed to the Debtor or the Reorganized Debtor;

(b)      Any and all Claims and causes of action that are listed in the Debtors' Schedules or Statement of Financial Affairs;

(c) Any and all Claims and causes of action which are subject to pending litigation in either the Bankruptcy Court or a non-bankruptcy forum;

(d) Any and all Claims against a Person, to the extent such Person asserts a crossclaim, a counterclaim, and/or a Claim for setoff that seeks affirmative relief against the Debtors or the Reorganized Debtors;

(e) Any claim of wrongful offset or recoupment against a party entitled to receive distributions under the Plan; and

(f) including the following pending and potential claims:

(i) Against Petrodome Energy LLC and Petrodome EC LLC ("Petrodome") arising out of its acquisition of a working interest in East Cameron 36, East Cameron 37 and Vermilion 20 (the "Subject Properties"). The claim is based upon the failure of the transfer or failure of Petrodome to perfect its asserted ownership in a 44% working interest in the Subject Properties. Petrodome has filed an adversary proceeding against the Debtor and it is believed the claim against Petrodome will be asserted as a counter-claim to such action.  To the extent Petrodome is found not to possess a working interest in the Subject Properties, all payments made to Petrodome within the last two years may be voidable. Petrodome alleges, among other things, that it is entitled to the disputed interest or is entitled to a lien on the interest to secure the purchase price paid.

(ii) Against Maxim Resources Inc., Gregory Fedun, Coldstream Energy Ltd., Petrel Properties, Inc., 0794889 B.C. Ltd., and Varo Capital Corporation (the "Probe Family"), this claim arises out of the joint operating agreement entered between the Debtor and Probe Family dated April 10, 2007. The claims that will be asserted will: 1) relate to amounts owed to the Debtor for advances made by the Debtor on account of the working interests owned by the Probe Family; and 2) claims under the Joint Operating Agreement covering High Island 115.

(iii) Against various officers and directors of the Debtor including, but not limited to, Scott Broussard and William Young, III.  The claims that may be asserted include, but are not limited to, the following: 1) the Debtors' relationship with Probe Family interests in High Island 115 and the failure of the Debtor to enforce its rights under the Joint Operating Agreement with the Probe Family; 2) sales of corporate assets or interests to insiders or affiliates of insiders for less than adequate consideration; 3) failure to cooperate with or possibly  misleading the Debtors' auditors and reserve engineer with respect to the value of the Debtors' assets; 4) loans to Broussard and the forgiveness of such loans; 5) use of corporate assets for the officers or

directors' personal benefit; and 6) payments received by such officers and directors for inadequate consideration or on account of an antecedent debt.

(iv) Claims against parties who received payments within ninety (90) days prior to the filing of the Debtors' Chapter 11 and insiders who received payments within one year on account of antecedent debts owed by the Debtor to such parties.

(v) Claims against parties who received assets of the Debtor for inadequate consideration within two years of the Debtor filing for relief under Chapter 11.

### 7.7     Office of the United States Trustee

The Reorganized Debtors shall provide the United States Trustee with financial reports on a quarterly basis in the form of affidavits of disbursements and pay all required fees until such time as a final decree is entered in these Chapter 11 Cases.

## 8.     CONDITIONS PRECEDENT TO EFFECTIVE DATE

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with the Plan:

(a)     the Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Debtors and K2 and shall, among other things:

(i)     provide that the Debtors and the Reorganized Debtors are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, to enter into, implement, and perform under the contracts, instruments, and other agreements or documents created in connection with the Plan;

(ii)     execute the Advancing Loan Facility Documents, the 246 DIP Credit Documents and the Post Confirmation Term Loan Documents;

(iii)     authorize the issuance of the New Common Stock pursuant to Section 1145 of the Bankruptcy Code; and

(iv)     provide that, notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan;

(v)     the Confirmation Order shall not then be stayed, vacated, or reversed;

(vi)     the New Probe Resources Governing Documents, the Subsidiary Merger Agreement, the Advancing Loan Facility Documents, the Post Confirmation Term Loan Documents and the 246 DIP Credit Documents, shall be in form and substance reasonably satisfactory to the Debtor and K2 and, to the extent any of such documents contemplates execution by one or more Persons, any such document shall have been executed and delivered by the respective

parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived;

(vii)    all material authorizations, consents, and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained;

(viii)   issuance by a Canadian court with jurisdiction of an order recognizing the Chapter 11 Bankruptcy Cases and an order of the Canadian court recognizing the Confirmation Order of the Bankruptcy Court; and

(ix)     all material actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

Upon the occurrence of the Effective Date, the Debtors or the Reorganized Debtors, whichever is applicable, shall file and serve a Notice of the Effective Date and the Claims Bar Date (to the extent not previously noticed) in the Case.

Each of the conditions set forth under this Article of the Plan, may be waived (except with respect to conditions required under the Bankruptcy Code or required to obtain an order from a Canadian court with jurisdiction recognizing the Confirmation Order) in whole or in part by the Debtors without any notice to parties in interest or the Bankruptcy Court and without a hearing; *provided, however,* that such waiver will not be effective without the consent of K2.

## 9.    RETENTION OF JURISDICTION

### 9.1    Scope of Jurisdiction

Until this Chapter 11 case is closed, the Bankruptcy Court will retain the jurisdiction as is legally permissible under applicable law to ensure that the purpose and intent of the Plan is carried out and to hear and determine all Claims, Interests and objections thereto that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to enforce all causes of action that may exist on behalf of Debtor, over which the Bankruptcy Court otherwise has jurisdiction.

### 9.2    Exclusive Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a)      Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(b)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(c)     Hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(d)     Issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(e)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(f)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(h)     To consider and rule upon objections to claim; and

(i)     Enter a final decree closing the Chapter 11 Cases.

**9.3     Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**10.     EFFECTS OF CONFIRMATION**

**10.1     Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Interests, and their respective successors and assigns, and all other parties-in-interest in these Chapter 11 Cases.

**10.2     Discharge Of The Debtors**

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against, or Interests in, the Debtors or any of their assets or properties, and, except as otherwise provided

herein or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of a Debtor prior to the Petition Date and that arises from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the holder of a Claim based upon such debt accepted the Plan.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the Effective Date occurring.

**10.3    Releases**

(a)    On the Effective Date, the Debtors shall be deemed to forever waive, release, and discharge any and all Causes of Action against K2 whether based in whole or in part, upon any act, omission, event, condition, or thing in existence or that occurred, in whole or in part, prior to the Effective Date of the Plan.

(b)    On the Effective Date, the Debtors shall be deemed to forever waive, release, and discharge any and all Causes of Action against the Restructure Committee members and the Creditors' Agent, whether based in whole or in part, upon any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan.

(c)    On the Effective Date, the Debtors shall be deemed to forever waive, release, and discharge any and all Causes of Action against Richard Buski, Desmond Balakrishnan, and Bradley Culver, whether based in whole or in part, upon any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan.

(d)    On the Effective Date, the Debtors shall be deemed to forever waive, release, and discharge the DRA Creditors' Agent and the DRA Joining Creditors from any claims, including pursuant to sections 541, 542, 544, 546, 547, 548 and 549 of the Bankruptcy Code on account of or related to (i) funds received by the DRA Creditors' Agent pursuant to the DRA, (ii) payments received by the DRA Joining Creditors from the DRA Creditors' Agent, and (iii) funds held by the DRA Creditors' Agent prior to, as of and subsequent to the Petition Date.

**10.4    Release, Exculpation and Limitation of Liability**

Notwithstanding any other provisions of the Plan, as of the Effective Date holders of any Claim or Interest[1] will be deemed to have conclusively, absolutely, unconditionally and irrevocably, forever released, waived and discharged each of the Debtors, the Reorganized

---

[1] For the avoidance of doubt, the Debtors are not considered holders of Claims or Interests for purposes of this section.

Debtors, K2, the DRA Creditors' Agent, the DRA Restructure Committee members, and any of their respective affiliates, representatives, members, officers, directors, employees, advisors, attorneys, or agents, from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever (except for their rights to enforce the Plan or the other agreements and documents delivered thereunder), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law or equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date, or that in any way relates to the Restructuring Transactions contemplated herein, the DRA, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Plan or the Disclosure Statement, except that, nothing in this section or the immediately preceding section shall release willful misconduct, fraud or criminal conduct.  Notwithstanding the forgoing, nothing in this section shall release any Causes of Action of K2 against L. Scott Broussard, William N. Young III, Paul A. Diven, Roger B. Sounders, Andre J. Broussard, Morgan Tincher, Dan Bomersbach, or any affiliates or entities owned or controlled by the present or former officers and directors of the Debtors.  In addition, the Reorganized Debtors shall defend, indemnify and hold harmless T. Coy Gallatin and Suzanne Ambrose from any claims asserted against them for activities both prepetition and post petition arising out of actions they took on behalf of the Debtors.

### 10.5    Release of Liens

Except as otherwise specifically provided in the Plan or the Confirmation Order, all Liens, security interests, deeds of trust, or mortgages against property of the Debtors' Estates shall and shall be deemed to be released, terminated, and nullified as of the Effective Date without further action; and the Bankruptcy Court, at the request of the Reorganized Debtors, may appoint a Person to execute appropriate releases of such Liens, security interests, deeds of trust or mortgages.  The Reorganized Debtors may file a copy of the Confirmation Order and Plan in any public property record or index as evidence of the release of liens hereunder.

### 10.6    Injunction

Except as otherwise provided in the Plan, from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, K2, or the Estate on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor; and (e) commencing or continuing, in any manner or in any place, any action or Derivative Claim that is property of the Debtors or Reorganized Debtors or that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent  with the terms of this Plan.

### 10.7 Plan Supplement

Any and all agreements, exhibits, lists or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement. All documents required to be filed with the Plan Supplement shall be filed with the Bankruptcy Court at least ten (10) days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy court during normal court hours. Copies of the Plan Supplement may also be obtained without charge from Debtors' counsel upon written request. All documents filed in the Bankruptcy Cases may viewed (a) during regular business hours (9:00 a.m. to 4:00 p.m. Central Time weekdays, except legal holidays) at the U.S. Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas and (b) electronically on the PACER system at https://ecf.uscourts.gov.

### 10.8 Change in Control

The entry of the Confirmation Order, consummation of the Plan, and/or any other acts taken to implement the Plan shall not constitute a "change in control" under any provision of any contract, agreement or other document which provides for the occurrence of any event, the granting of any right, or any other change in the then-existing relationship between the parties upon a change in control.

### 10.9 Avoidance Actions

As of the Effective Date, subject to the releases provided under the Plan, the Avoidance Actions shall be deemed transferred to the Liquidating Trust. The Liquidating Trust may enforce, sue on, and, settle or compromise (or decline to do any of the foregoing), any or all of the Avoidance Actions. The Liquidating Trustee shall be appointed representative of the Debtors' bankruptcy estates pursuant to Bankruptcy Code § 1123(b)(3)(B) with respect to the Avoidance Actions. Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall be vested with authority and standing to prosecute any Avoidance Actions. The Liquidating Trustee and his attorneys or other professional advisors shall have no liability for pursuing or failing to pursue any Avoidance Action.

### 10.10 Liquidating Trust and Liquidating Trustee

### (a) The Liquidating Trust

The Liquidating Trust shall be governed by the Liquidating Trust Agreement. The Liquidating Trust, duly organized under the laws of the State of Texas, shall be created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the distributions to holders of Class 2 Claims and holders of Class 5 Claims and the Liquidating Trust is not otherwise authorized to engage in any trade or business. The beneficiaries of the Liquidating Trust who will be treated as the grantors and deemed owners for federal income tax purposes are (i) holders of Class 2 Claims with respect to the Class 2 Deposits, and (ii) the holders of Class 5 Claims with respect to the Avoidance Actions. The Liquidating Trustee shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to § 671 of the Internal Revenue Code of 1986, as amended, and Treasury Tax Regulations promulgated thereunder. The parties shall not take any position on

their respective tax returns or with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the Internal Revenue Services.

**(b)    Trust Deposits**

All of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets, as of the Effective Date.  The Liquidating Trustee shall be substituted (or shall intervene if necessary) as plaintiff, defendant, or other party in all lawsuits involving Avoidance Actions pending in which any of the Debtors is the plaintiff as of the Effective Date.  The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to the Plan and the Confirmation Order and shall be effective upon the Effective Date, without the need of further documentation or instruments of conveyance.  Upon the Effective Date, the Liquidating Trust shall also be deemed to have taken (a) an assignment of all Avoidance Actions against third parties for obligations or claims existing on or created by virtue of the Effective Date, unless expressly released in the Plan, and (b) an assignment, covering all other Liquidating Trust Assets.  The Class 2 Deposits shall be administered by the Liquidating Trustee for the exclusive benefit of holders of Class 2 Claims.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust beneficiaries) shall treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust beneficiaries followed by (b) the transfer by the Liquidating Trust beneficiaries to the Liquidating Trust of the Liquidating Trust Assets.  The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.  The (i) Class 2 Creditors shall be treated as the grantors and owners of their pro rata portion of the Class 2 Deposits for federal income tax purposes, and (ii) the Class 5 Creditors shall be treated as the grantors and owners of their pro rata portion of the Avoidance Actions for federal income tax purposes.

**(c)    The Liquidating Trustee**

The initial Liquidating Trustee shall be Jeffrey A. Compton.  The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his responsibilities under the Plan, and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).  Matters relating to the removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall have standing to object to allowance of Claims and the terms of any proposed settlement of a Disputed Claim.

**(d)    Retention of Professionals**

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his duties.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the Liquidating Trust Assets upon the monthly submission of statements to the Liquidating Trustee.  The payment of the reasonable fees (including any fees pursuant to a contingent fee agreement) and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Liquidating Trust Assets, and shall not be subject to the approval of the Bankruptcy Court.  Due to funding constraints, it is anticipated that the Liquidating Trust may enter into one or more contingent fee agreements.

### (e)    Compensation of the Liquidating Trustee

The Liquidating Trustee's compensation shall be in accordance with the Liquidating Trust Agreement.

### (f)    Liquidating Trust Expenses

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

### (g)    Liability; Indemnification

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Liquidating Trustee shall have no obligation to pursue an Avoidance Action if, in his judgment, pursuit of the action is not cost justified.  The Liquidating Trustee may, in connection with the performance of his functions, and in his sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.   Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accounts or his agents, and his determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud.   The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of his duties; provided, however, that no such indemnification will be made for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

(h)      **Termination**

The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Avoidance Actions transferred and assigned to the Liquidating Trust, are fully resolved, abandoned or liquidated and the available cash has been distributed in accordance with the Plan and the Liquidating Trust Agreement.  The Liquidating Trust shall terminate no later than three (3) years after the Effective Date.  However, if the Liquidating Trust Administration Committee determines that an extension is necessary, the term of the Liquidating Trust may be extended, one or more times (not to exceed a total of three (3) additional years, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes).

(i)      **Distributions**

Proceeds received by the Liquidating Trust attributable to Avoidance Actions, net of fees and expenses of the Liquidating Trustee with respect thereto, shall be distributed pro rata to holders of Class 5 Claims.  Proceeds received by the Liquidating Trust attributable to the Class 2 Deposits, net of fees and expenses of the Liquidating Trustee with respect thereto, shall be distributed pro rata as follows: (i) seventy percent (70%) to DRA Class 1 Joining Creditors pro rata; and (ii) thirty percent (30%) to DRA Class 3 Joining Creditors pro rata.

**10.11   Delivery of Distributions or Unclaimed Distributions**

Distributions by the Liquidating Trustee to holders of Class 2 Claims and holders of Class 5 Claims pursuant to the Plan shall be made by United States mail to the addresses of creditors reflected in the books and records of the Debtors.

If any holder's distribution is returned as undeliverable, no further distributions to that holder shall be made unless the Liquidating Trustee receives notice of the holder's then-current address, at which time all outstanding distributions shall be made to the holder.  Undeliverable distributions shall be returned to the Liquidating Trustee until such distributions are claimed. The Liquidating Trustee shall establish a segregated account to serve as the unclaimed distribution reserve, and all undeliverable and unclaimed distributions shall be deposited therein, for the benefit of all similarly situated Persons until such time as a distribution becomes deliverable or is claimed.

Any undeliverable or unclaimed distribution under the Plan that does not become deliverable on or before the second anniversary of the Effective Date shall be deemed to have been forfeited and waived, and the Person otherwise entitled thereto shall be forever barred and enjoined from asserting its Claim therefore against, or seeking to recover its distribution from, the Debtors, the Estates, the Reorganized Debtors or the Liquidating Trust, or their property. After the second anniversary of the Effective Date, the Liquidating Trustee shall withdraw any amounts remaining in the unclaimed distribution reserve and distribute said amount to the other holders of the applicable Class of Claims in accordance with the Plan and the Liquidating Trust Agreement.

**10.12    Withholding and Reporting Requirements**

In connection with the Plan and all distributions thereunder, the Reorganized Debtors or the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions shall be subject to those requirements. The Reorganized Debtors or the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with those withholding and reporting requirements. Notwithstanding any other provision of the Plan, (i) each holder of an Allowed Claim that is to receive a distribution of cash shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and (ii) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Reorganized Debtors or the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtors or the Liquidating Trustee's satisfaction, established an exemption therefrom. Any distribution of a pro rata share of cash to be made pursuant to the Plan shall, pending the implementation of such arrangements, be treated as undeliverable.

**10.13    Setoffs**

The Reorganized Debtors and the Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made in respect of that Claim, claims of any nature whatsoever that the Debtors, Reorganized Debtors or Liquidating Trustee may have against the Claim's holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors or Liquidating Trustee of any claim that the Debtors, Reorganized Debtors or Liquidating Trustee may have.

**10.14    Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**10.15    Liquidating Trust Administration Committee**

The Trustee of the Liquidating Trust shall establish a committee (the "Liquidating Trust Administration Committee" or "LTAC"), consisting of no more than five (5) creditors from the existing DRA Joining Creditors to consult with the Trustee regarding the Trust Assets and the administration of the Liquidating Trust. The powers and duties of the LTAC shall be set forth in the Liquidating Trust Agreement. The initial members of the LTAC shall be selected by the DRA Restructure Committee. The LTAC shall only exist so long as there are two (2) creditors willing to serve. No compensation to the members of the LTAC shall be paid by the Trustee from the Trust Assets; provided however, reasonable expenses of the LTAC may be reimbursed

by the Trustee at his discretion.  The LTAC shall have standing as a party in interest to enforce the terms and provisions of the Liquidating Trust Agreement.  The members of the LTAC shall not be liable for any act done or omitted to be done as a member of the LTAC while acting in good faith.  The members of the LTAC shall not be liable in any event except for gross negligence or willful fraud or misconduct.  Each LTAC member will recuse itself from participating in any decision-making by the LTAC on any matter which there is a conflict of interest, including without limitation, any decision whether to initiate, prosecute, or settle an Avoidance Action against such LTAC member.  The Liquidating Trustee will be authorized to prosecute, settle or dismiss Avoidance Actions as the Liquidating Trustee determines.

## 11.    MISCELLANEOUS PROVISIONS

### 11.1    Professional Fee Claims and Substantial Contribution Claims

All final requests for payment of Professional Fee Claims and any Substantial Contribution Claims must be filed and served on the Reorganized Debtors, their counsel, counsel to K2, and other necessary parties in interest no later than 60 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such requests for payment must be filed and served on the Reorganized Debtors, their counsel, counsel to K2, other necessary parties in interest and the requesting Professional or other entity no later than 20 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

Fees and expenses of the DRA Creditors' Agent, the DRA Restructure Committee, and their professionals shall not be allowed as a Professional Fee Claim or Substantial Contribution Claim.

### 11.2    Dissolution of Creditors Committee

Any Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Section 1103 of the Bankruptcy Code. On the Effective Date, the Creditors Committee shall be dissolved, the Creditors Committee's members shall be deemed released from all of their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Creditors Committee's attorneys, accountants, professionals, and other agents shall terminate, except with respect to (a) all Professional Fee Claims, (b) any Substantial Contribution Claims, and (c) any appeals of the Confirmation Order.

### 11.3    Dissolution of DRA Restructure Committee

As of the Effective Date, (i) the DRA shall be terminated, (ii) the DRA Restructure Committee shall be dissolved, (iii) the DRA Restructure Committee's members, the DRA Creditors' Agent and their representatives and agents shall be deemed released from all of their duties, responsibilities, and obligations in connection with the DRA, Chapter 11 Cases or the Plan and its implementation.  Provided however, the Creditors' Agent shall execute any and all releases of liens and mortgages reasonably requested by the Reorganized Debtors to effect a release of the liens and mortgages of record granted pursuant to the DRA.

### 11.4    Payment of Statutory Fees

All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Reorganized Debtors. The obligation of each of the Reorganized Debtors to pay quarterly fees to the Office of the United States Trustee pursuant to Section 1930 of Title 28 of the United States Code shall continue until such time as a particular Chapter 11 Case is closed, dismissed or converted.

### 11.5    Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, the Reorganized Debtors and all other parties in interest in the Chapter 11 Cases.

### 11.6    Compromises and Settlements

From and after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and other claims that they may have against other Persons without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle Claims against them or other claims that they may have against other Persons, subject to the approval of the Bankruptcy Court if, and to the extent, required.

### 11.7    Releases and Satisfaction of Subordination Rights

All Claims against the Debtors and all rights and claims between or among the holders of Claims relating in any manner whatsoever to any claimed subordination rights shall be deemed satisfied by the distributions under, described in, contemplated by, and/or implemented in Article 3 of the Plan. Distributions under, described in, contemplated by, and/or implemented by the Plan to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

### 11.8    Modifications and Amendments

The Debtors may, with the consent of K2, alter, amend, or modify the Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, with the consent of K2, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 11.9    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of any Debtors with K2's consent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.10   Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to, with the consent of K2, revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

### 11.11   Notices

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtors under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

For the Debtor:

Attn:  Coy Gallatin or Suzanne Ambrose
Probe Resources US, Ltd.
24 Waterway, Suite 1450
The Woodlands, Texas 77380

with copies to:

Douglas S. Draper (LA Bar No. 5073)
William H. Patrick, III (LA Bar No. 10359)
Leslie A. Collins (LA Bar No. 10359)
Heller, Draper, Hayden, Patrick & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Fax:       (504) 299-3399

**11.12    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

*[Signature page to follow]*

Dated this 11th day of February, 2011.

By: /s/ T. Coy Gallatin
      T. Coy Gallatin
      Chief Restructuring Officer

{00313277-2}                                        38